## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**SCAR HEAL, INC.,**

       **Plaintiff,**

**v.**                                   **Case No.: 8:14-cv-733-T-33AEP**

**JJR MEDIA, INC.,**
**JACOB KAUFFMAN, individually,**
**JORDAN KAUFFMAN, individually, and**
**ROBERT KAUFFMAN, individually,**

       **Defendants.**
_____/

### FINAL JUDGMENT AND PERMANENT INJUNCTION

     BEFORE THE COURT is the Stipulated Motion for Entry of Final Judgment and Permanent Injunction (Dkt. # 38) filed jointly by Plaintiff, Scar Heal, Inc. ("Scar Heal") and Defendants, JJR Media, Inc. ("JJR"), Jacob Kauffman, Jordan Kauffman, and Robert Kauffman (collectively, "Defendants") seeking entry of final judgment and permanent injunctive relief against Defendants. Upon consideration and for the reasons set forth below, that motion is GRANTED.

### I.    Procedural Posture

     Scar Heal filed its two-count Amended Complaint in this action on July 16, 2014 (Dkt. #34). Count I seeks redress for Defendants' alleged infringement of Scar Heal's federally registered Rejuvaskin® trademark and Count II is a claim for unfair competition in violation of the Lanham Act. Also pending is Scar Heal's Motion for Preliminary Injunction (Dkt. #23). Rather than answer the Amended Complaint or proceed to a hearing

on Scar Heal's Motion for Preliminary Injunction, the Defendants, through counsel, stipulated to the entry of a Final Judgment and Permanent Injunction against them.

This Court has subject matter jurisdiction over this case under 28 U.S.C. §1331 and personal jurisdiction over Defendants, all of whom have appeared without contesting personal jurisdiction.  For the reasons set forth in the Court's Order Denying the Motion to Dismiss (Dkt. #31), venue is proper before this Court.  Additionally, the Plaintiff's Motion for Preliminary Injunction (Dkt. #23), which is supported by the Declarations of its President, Margaret Catherine Burney, its Operations Manager, John Eshleman, the President of one of Scar Heal's distributors, Brett Apter, and a legal assistant for Scar Heal's trial counsel, Cynthia Nelson, as well as other documents, is part of the Court file and the Court has taken notice of that motion and the supporting materials.

## II.    Background

The parties stipulate and ask this Court to enter a final judgment in favor of Plaintiff, Scar Heal, and against Defendants, and to permanently enjoin Defendants from infringing Scar Heal's federally registered Rejuvaskin® trademark and to refrain from any action that will likely cause the consuming public to mistakenly and unfairly associate Defendants' skin care products and business practices with Scar Heal and Scar Heal's skin care products or cause the consuming public to mistakenly and unfairly associate Scar Heal and Scar Heal's skin care products with the Defendants, Defendants' products and business practices.

### III.        Findings of Fact

For more than twenty-five years, Scar Heal, formerly known as Specialty Systems, Inc., has provided high quality skin care products to the public.

Scar Heal owns the federally registered trademark "Rejuvaskin®" for anti-wrinkle cream, U.S. Reg. No. 3,141,552 (the "Rejuvaskin® Mark").

Scar Heal uses its Rejuvaskin® Mark in interstate commerce in connection with its Rejuvaskin® product line of anti-wrinkle creams and has done so continuously for over ten (10) years.

Scar Heal's Rejuvaskin® Mark has been granted incontestable status by the U.S. Patent and Trademark Office.

Scar Heal's Rejuvaskin® Mark is part of Scar Heal's "Rejuva" family of marks, which family also includes the marks RejuvaSil® and Rejuvascar™.

Since 2005, Scar Heal has spent significant sums of money to promote the Rejuvaskin® Mark and its Rejuvaskin® products to Scar Heal's customers and potential customers.

In addition to promoting its Rejuvaskin® products on its website and third-party websites, such as www.amazon.com, Scar Heal advertises and promotes its Rejuvaskin® products at medical trade shows including regular exhibitions at the American Academy of Dermatology Annual Meeting, meetings of The American Society of Plastic Surgery, the Dermatology for Non-Dermatology Conference, The Dermatology Nurses Association, and the Medica Trade Fair in Dusseldorf, Germany, which is the World's largest international medical trade show.  Scar Heal also sends monthly mailings and utilizes

telemarketing to U.S.-based dermatologists and plastic surgeons to promote its products, including its Rejuvaskin® products.

Scar Heal's advertisement, promotion, and use of the Rejuvaskin® Mark in connection with its Rejuvaskin® product line has resulted in Scar Heal enjoying significant goodwill associated with its Rejuvaskin® Mark.

The records of the Florida Secretary of State, accessible and maintained at www.sunbiz.org, show that JJR Media was incorporated in January 2012, and at all times since its incorporation Jacob Kauffman, Robert Kauffman, and Jordan Kauffman have been the sole officers, directors, and decision-makers of JJR Media.

In 2013, Scar Heal became aware that the name "Rejuvalskin" (the "Defendants' Infringing Mark") was being used to advertise, distribute, market, and selling anti-wrinkle cream on the Internet.

The Defendants' Infringing Mark differs from Scar Heal's federally registered and incontestable Rejuvaskin® Mark by only a single letter.   Specifically, Defendants' infringing Rejuvalskin mark contains an "l" tucked between the terms "rejuva" and "skin" and is both visually and audibly confusingly similar to Scar Heal's federally registered and incontestable Rejuvaskin® Mark.

Defendants, directly or through their affiliates, use the Defendants' Infringing Mark in interstate commerce to advertise, distribute, market, and sell their anti-wrinkle cream marked with the infringing Rejuvalskin mark, including use of the following websites:

www.rejuvalskin.com,

www.rejuvalskin.net,

www.rejuvalskin.org,

www.rejuvalskincare.com,

www.rejuvalskinreview.com,

www.rejuvalskinreviewed.com,

www.rejuvalskinreview.net,

www.rejuvalskinlift.com,

www.rejuvalsite.com,

www.rejuvals.com, and

www.myskinmd.com, (the "Infringing Websites").

Defendants' Rejuvalskin products using the Defendants' Infringing Mark are also sold on third party websites, such as www.amazon.com.

Dozens of Defendants' customers have been confused by the Defendants' Infringing Mark and have mistakenly contacted Scar Heal and its distributors to complain about Defendants' Rejuvalskin products and their business practices.

Additionally, some of Defendants' customers confused Defendants' "Rejuvalskin" product with Scar Heal's Rejuvaskin® product and complained to Scar Heal and its distributors about a "trial" of the Rejuvalskin product.

Two of Defendants' dissatisfied customers who were confused between Scar Heal's Rejuvaskin® Mark and Defendants' Infringing Mark mistakenly posted negative reviews intended for Defendants on Scar Heal's www.amazon.com profile.  Those complaints expressed consumers' dissatisfaction with Defendants' (not Scar Heal's) products.  Scar

Heal had to expend its time and resources to have those erroneous complaints (intended for Defendants) removed from its www.amazon.com profile.

Before filing suit, Scar Heal demanded in writing that the Defendants cease their use of Defendants' Infringing Mark and infringement of Scar Heal's federally registered Rejuvaskin® Mark.  Despite Scar Heal's written demands and its filing of its Complaint in this case, Kauffman and JJR Media, have continued using their "Rejuvalskin" mark.

Scar Heal has been, and continues to be, harmed by Defendants and their use of the Defendants' Infringing Mark, which harm includes injury to its goodwill and reputation.

## IV.    Legal Conclusions

Scar Heal's Rejuvaskin® Mark is not only valid, the validity of that mark has been granted incontestable status by the United States Patent and Trademark Office.  Even absent its incontestable status, Scar Heal's Rejuvaskin® Mark has been federally registered since September 2006.  "Federal registration is prima facie evidence of the registrant's ownership and exclusive right to use the mark."  *Jaguar Cars, Ltd. v. Skandrani*, 771 F. Supp. 1178 (S.D. Fla. 1991) *citing* 15 U.S.C. §1057.

A likelihood of confusion exists between Defendants' use of the Defendants' Infringing Mark and the Scar Heal's Scar Heal's Rejuvaskin® Mark.  "To determine whether marks are likely to be confused, seven factors are considered: '(1) the type of mark, (2) the similarity of the marks at issue, (3) the similarity of the services the marks represent, (4) the similarity of the parties' service outlets and customers, (5) the nature and similarity of the parties' advertising media, (6) the defendant's intent and (7) any actual confusion."  *You Fit*, at *5 *citing Sovereign Military Hospitaller Order of Saint John of*

*Jerusalem of Rhodes and of Malta v. Fla. Priory of Knights Hospitallers of Sovereign Order of St. John of Jerusalem, Knights of Malta, Ecumenical Order*, 702 F.3d 1279, 2012 WL 6582565, at *9 (11th Cir. 2012).

"[T]he Court must evaluate the weight to be accorded the individual factors and then make its ultimate decision.  The appropriate weight to be given to each of these factors varies with the circumstances of the cases." *You Fit*, at *6 *citing AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (11th Cir. 1986).  The type of mark and the evidence of actual confusion are the two most important factors of the seven.  *Id.* at *6 *citing Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012).

Scar Heal's Rejuvaskin® Mark is both strong and valid.  As noted above, the Rejuvaskin® Mark is registered and incontestable.  Thus, the mark is "subject to a statutory presumption of validity." *Howard Johnson Int'l, Inc. v. Craven Properties, Ltd.*, 2002 U.S. Dist. Lexis 19744, *9 (M.D. Fla. 2002).  There are four categories of marks, and the stronger the mark, the stronger the protection for said mark. *Frehling Enterprises v. Int'l Select Group, Inc*., 192 F.3d 1330, 1335 (11th Cir. 1999).  The categories, from weakest to strongest are: "(1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary.  *Id.*  At a minimum, Scar Heal's mark is suggestive.  "Suggestive terms suggest characteristics of the goods and services and require an effort of the imagination by the consumer in order to be understood as descriptive." *Id.* at 1335 *citing Dieter v. B&H Indus. of S.W. Fla., Inc.* 880 F.2d 322, 326 (11th Cir. 1989); *see also You Fit*, at *7 ("A suggestive mark refers to some characteristic of the goods, but requires the leap of the imagination to get from the mark to the product.").  Scar Heal's Rejuvaskin® Mark requires such effort or leap of

imagination.  The term or name "Rejuvaskin" does not describe Scar Heal's anti-wrinkle cream product.  Rather, a consumer's imagination must take the next step to associate the Rejuvaskin® Mark with anti-wrinkle cream.  Therefore, Scar Heal's mark is suggestive and accorded the heightened level of protection, such that a secondary meaning is not required.  *Id.*  This factor supports a likelihood of confusion.

In the likelihood of confusion analysis, evidence of actual confusion is one of the most important factors.  *See Suntree,* 693 F.3d at 1346.  "While actual confusion is not essential to a finding of likelihood of confusion, it is the 'best evidence of likelihood of confusion.'"  *Howard Johnson,* at *15.  Here, Scar Heal presents evidence of more than thirty (30) instances of actual confusion by the consuming public.  This confusion caused some of Defendants' customers to mistakenly post negative reviews about Scar Heal.  Because the only instances of actual confusion known to Scar Heal involve Defendants' confused customers contacting Scar Heal and its distributors, and mistakenly posting negative reviews on the Internet, there are undoubtedly additional instances of confusion beyond those known to Scar Heal.

Dozens of Defendants' customers have mistakenly contacted Scar Heal and its distributors to complain about being scammed by Defendants because those customers thought Scar Heal was the source of the Defendants' Rejuvalskin product.  Some such consumers relayed to Scar Heal's distributors that they purchased Defendants' product believing they were receiving a "trial."  Defendants later billed those customers in full for the "Rejuvalskin" product and automatically set them up for a monthly subscription.

Confusing Defendants' "Rejuvalskin" product with Scar Heal's Rejuvaskin® product, those consumers complained to Scar Heal and its distributors about the Defendants' "trial."

Similarly, two (2) of Defendants' customers confused between Scar Heal's Rejuvaskin® Mark and Defendants' Infringing Mark mistakenly posted negative reviews intended for Defendants on Scar Heal's www.amazon.com profile.  Those complaints expressed their dissatisfaction with Defendants' "Rejuvalskin" product.  Scar Heal expended its time and resources to have those erroneous complaints (intended for Defendants) removed from its www.Amazon.com profile.  Thus, Scar Heal suffered, and continues to suffer, from the confusion between the Rejuvaskin® Mark and Defendants' Rejuvalskin mark, and Defendants' business practices.  This critical factor heavily favors finding a likelihood of confusion.

In evaluating the similarity of the marks, the Court "must consider the overall impression created by the marks." *Howard Johnson*, at *10.  The Defendants' Infringing Mark, "Rejuvalskin," is identical to Scar Heal's Rejuvaskin® Mark, but for the addition of the lower-case letter "l" placed in the middle of the mark.   As a result of this nominal difference, the two marks look and sound nearly identical.

"Slight differences surrounding the mark will have little impact on the consuming public." *Id*.  The single letter difference between the marks has not prevented, and will not prevent, consumer confusion because they create the "same overall impression." *Id*.; *see also Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*, 598 F. Supp. 2d 1248, 1262-63 (M.D. Fla. 2009)(Stylistic differences between the "Home & Land" and "Homes & Loan Magazine" trademarks do not change the overall impression of the mark,

which was held likely to cause confusion.)  Thus, this factor also weighs heavily in favor of finding a likelihood of confusion.

Defendants and Scar Heal sell the same type of product--anti-wrinkle cream.  "The greater the similarity between the products and services, the greater the likelihood of confusion."  *Howard Johnson*, at *12 *citing John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966 (11th Cir. 1983).  In this case, the products are virtually identical.  Thus, this factor weighs heavily in favor of finding a likelihood of confusion.

Scar Heal and Defendants are direct competitors and use the same means to reach the same customers.  They both sell product on the Internet via their own websites and third party websites, such as www.amazon.com.  Scar Heal and Defendants also target the same group of consumers - persons seeking to correct or prevent wrinkles on their skin.  Accordingly, this factor also weighs in favor of finding a likelihood of confusion.

Scar Heal and Defendants both advertise their products on the Internet via their websites.  This factor too favors finding a likelihood of confusion.

Proof of intentional infringement is not required to establish liability for trademark infringement under the Lanham Act.  *See Howard Johnson*, at *13 *citing Varitronics Sys, Inc. v. Merlin Equip., Inc.*, 682 F. Supp. 1203, 1207 (S.D. Fla. 1988).  Nevertheless, Defendants' continued use of the Defendants' Infringing Mark *after* notification from Scar Heal that the Rejuvalskin mark was infringing the Rejuvaskin® Mark and even after filing this suit supports finding a likelihood of confusion.

10

To satisfy the second prong of the test for entry of a preliminary injunction, the moving party must show it will suffer irreparable injury unless the injunction is issued. *eBay v. MerchExchange LLC*, 547 U.S. 388 (2006).  It is usually recognized in trademark infringement cases that there is not an adequate remedy at law to redress infringement and infringement by its nature causes irreparable harm."  *General Motors Corp. v. Phat Cat Carts, Inc.*, 504 F. Supp. 2d 1278 (M.D. Fla. 2006).  Although there is a presumption of irreparable harm in trademark infringement cases, loss of control of reputation, loss of trade, and loss of goodwill are all grounds for irreparable harm.  *7-Eleven, Inc. v. Kapoor Bros., Inc.*, 2013 U.S. Dist. Lexis 149063 (M.D. Fla. 2013).

As discussed above, Scar Heal has suffered, and will continue to suffer, harm to its reputation and goodwill unless Defendants are enjoined.  Dozens of consumers have repeatedly confused Defendants' "Rejuvalskin" product with Scar Heal's Rejuvaskin® product.  Moreover, many consumers have associated defects in Defendants' product with Scar Heal and complained to Scar Heal about such defects.  Scar Heal's reputation and goodwill has further been harmed by Defendants' Infringing Mark and their business practices because consumers mistakenly posted complaints about Defendants to Scar Heal's Amazon profile.  All of these occurrences of confusion affect Scar Heal's reputation and goodwill and support a finding that Scar Heal will suffer irreparable harm absent the requested injunction.

"The relevant inquiry in assessing the weight of potential harms is whether the probable loss of consumer goodwill outweighs Defendants' losses" from their inability to use Defendants' Infringing Mark.  *7-Eleven*, at *39-40  *citing Davidoff & Cie, S.A. v. PLD*

11

*International Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001).  The threatened and existing harm to Scar Heal far outweighs the potential harm to Defendants.

Scar Heal has been, and will continue to be, harmed by Defendants' use of Defendants' Infringing Mark unless an injunction is entered.  The evidence shows that Defendants' use of their Infringing Mark and business practices while using that mark has harmed Scar Heal's reputation and goodwill.  Dozens of consumers have repeatedly confused Defendants' Infringing Mark with Scar Heal's Rejuvaskin® Mark in mistakenly lodging complaints with Scar Heal that were intended for Defendants.  To alleviate the harm to Scar Heal, an injunction must be entered against Defendants.

In contrast to Scar Heal's longstanding reputation in the industry, Defendants are newcomers with no rights to use a confusingly similar mark to Scar Heal's federally registered and incontestable Rejuvaskin® mark.  Any harm or injury suffered by Defendants is "self-inflicted and Defendants should not be heard to complain about hardship when their actions were taken with knowledge of [Plaintiff's trademark]." *Howard Johnson*, at *19.  By selecting a trademark nearly identical to Scar Heal's Rejuvaskin® mark, Defendants acted at their own peril.  *See id*.  Accordingly, such self-inflicted harm to Defendants' year old business, does not outweigh the real, substantial harm suffered by Scar Heal.  The third prong clearly weighs in favor of entering a preliminary injunction.

The interests of the consuming public are "present and paramount" in a trademark infringement case.  *See id.* at *19-20.  "[A] preliminary injunction in this case 'is not adverse to the public interest, because the public interest is served by preventing consumer

confusion in the marketplace.'" *7-Eleven*, at *41-42 *citing Davidoff*, 263 F.3d at 1304.  As discussed in the likelihood of confusion analysis above, not only is there potential for consumer confusion, but there have been dozens of instances of actual confusion by the consuming public.  Consequently, the public interest would be served by the entry of a preliminary injunction against Defendants.

## V.    Conclusion

Accordingly and upon consideration, it is hereby ORDERED that:

A.    The Stipulated Motion for Entry of Final Judgment and Permanent Injunction (Dkt. # 38) is GRANTED;

B.    Judgment is entered in favor of Plaintiff, Scar Heal, Inc. and against each of the Defendants on both Count I and Count II of the Amended Complaint;

C.    Defendants, their agents, licensees, representatives, employees, attorneys, successors and assigns, and all those in active concert or participation with any of them who receive notice of such judgment directly or otherwise, are shall be and hereby are preliminarily enjoined from:

(1)    infringing Scar Heal's federally registered Rejuvaskin® Mark;

(2)    using, or aiding, assisting or abetting any other party from using "Rejuavalskin", "Rejuval Skin", and any other mark confusingly similar to Scar Heal's federally registered Rejuvaskin® Mark, in any fashion, without the prior written consent of Scar Heal; and

(3)    violating 15 U.S.C. §1125(a), and from aiding, assisting or abetting any other party from such violations by causing confusion as to the source, origin,

sponsorship or affiliation between Defendants' and their products and Scar Heal and the products of Scar Heal; and

   D.  Each party shall bear its own attorneys' fees, costs, and expenses.

   DONE AND ORDERED in Chambers, in Tampa, Florida, this 30th day of July, 2014.

                     VIRGINIA M. HERNANDEZ COVINGTON
                      UNITED STATES DISTRICT JUDGE

Copies to:  All counsel and parties of record